PATRICIA M. CAMILLO et al., as Coguardians of MATTHEW R. MAY, Also Known as THOMAS BARRETT, Respondents-Appellants, v OLYMPIA & YORK PROPERTIES COMPANY et al., Respondents. FMC CORPORATION, Third-Party Plaintiff-Appellant, v CANRON, INC., Third-Party Defendant-Respondent. (Action No. 1.)

CANRON, INC., Respondent, v FMC CORPORATION, Appellant, et al., Defendants. (Action No. 2.)

First Department, May 1, 1990

38

**APPEARANCES OF COUNSEL**

*Richard M. Schrier (Jeffrey S. Tanen* and *Donald M. Munson* with him on the brief), for respondents-appellants.

*Howard R. Cohen* of counsel *(Gerald N. Swartz* with him on the brief; *Bower & Gardner,* attorneys), for Olympia & York Properties and another, respondents.

*Sheila L. Birnbaum* of counsel *(Timothy G. Reynolds* and *Thomas E. Fox* with her on the brief; *Skadden, Arps, Slate, Meagher & Flom,* attorneys), for third-party plaintiff-appellant.

*Glenn J. Fuerth* of counsel *(Sheryl E. Katz* with him on the brief; *Wilson, Elser, Moskowitz, Edelman & Dicker,* attorneys), for Charles M. Shapiro & Sons, defendant-respondent.

*Ray L. LeFlore* for Canron, Inc., defendant and third-party defendant-respondent and plaintiff-respondent.

*Steven B. Prystowsky* of counsel *(Eric A. Portuguese* with

him on the brief; *Lester Schwab Katz & Dwyer,* attorneys), for William Geer and another, defendants-respondents.

## OPINION OF THE COURT

Asch, J.

Matthew May was injured when a crane owned by Canron, Inc. (Canron-Canada), under the control of its New York subsidiary, Canron Corporation (Canron-NY), and operated by the latter's employee, William Geer, collapsed, striking a building across the street and causing pieces of concrete to fall. Olympia & York Properties Company owned the property on which the crane was mounted. O&Y Construction Corp. was the general contractor. Charles M. Shapiro & Sons, P. C. was the crane engineering consultant.

FMC Corporation (FMC) was the parent company of FAVCO International Corp. at the times relevant to the case before us. FAVCO was the United States distributor, supplier and assembler of crane component parts obtained in kits from Favelle Mort, Ltd., an independent Australian corporation, and manufacturer of the crane parts. The crane involved in the instant occurrence was the FAVCO 1500 crane. It was designed to operate from the top of a building structure and to climb up the building as additional stories were added.

In 1973, Canron-Canada purchased the component parts for two FAVCO 1500 cranes from Favelle Mort. Canron-Canada assembled the cranes in Canada. It had used them earlier in connection with construction of a building for the Bank of Montreal in downtown Toronto. In February 1975, an aluminum sheave, a component part of the crane, broke while the crane was lifting a load of steel that was variously estimated at 16 to 20 tons. Arnold Van Hees, Canron-Canada's construction manager, took note of the broken sheave on one crane and observed a cracked sheave on the second. Canron-Canada immediately ordered replacement sheaves from FMC. FMC provided Canron-Canada with the replacements, which had been manufactured by Favelle Mort in Australia. Upon receipt of the replacements, Van Hees noticed what he considered to be defects in the aluminum replacement sheave, which he described as scruffiness. Even though he did not like the way the sheaves looked, Canron-Canada nevertheless installed them in the crane because they were the only sheaves available at the time. Van Hees asked his superior to make an inquiry of FMC with respect to the sheaves. As a precaution,

Canron-Canada instituted weekly, rather than the usual monthly, inspections of the part. They performed properly for approximately two months and showed no evidence of cracks, although they had lifted approximately 22-ton loads. Van Hees, as a consequence, thought that the first set of sheaves which originally came with the crane in 1973 might have been a fluke or a bad batch of aluminum castings. Accordingly, Canron-Canada was satisfied with the replacement sheaves.

Canron-Canada did have metallurgical tests performed upon the broken sheaves to determine the cause of their failure. In April 1975, it received a report which concluded that the failure arose from casting deficiencies. The report provided that sheaves should be molded out of a different aluminum alloy. Canron-Canada forwarded a copy of the report to FAVCO International, FMC's subsidiary. The communication was given to FMC's service manager on April 22, 1975. He wrote to Favelle Mort, the manufacturer, seeking a credit to FMC's account, since the claims were under warranty, and requesting that Favelle Mort make a more extensive check on the sheaves before shipping them to the United States. Favelle Mort did not respond to FMC's letter and FMC made no further inquiry. Likewise, Canron-Canada never followed up on its letter to FMC and never made inquiry of Favelle Mort. Canron-Canada continued to use the sheaves without any additional precautions.

In 1977, FMC received a report from American Bridge, an American company which used the FAVCO 1500 cranes, that cracks had been discovered in their aluminum sheaves. These sheaves were replaced by FMC with steel sheaves which it, rather than Favelle Mort, had manufactured. However, even though it had developed the steel replacement, FMC never notified the other 17 crane owners located in North America of the casting problems with the aluminum sheave or that steel replacements were available.

In 1980, Canron-Canada provided Canron-NY with one of its cranes for use in connection with the construction work to be performed at 466 Lexington Avenue, New York County, on property owned by Olympia & York. The crane was shipped and its various parts inspected prior to and after assembly. There were no noticeable defects. The crane was also tested for overloading, circumstances in which the load exceeded the limit set out on the capacity chart prepared by defendant Charles M. Shapiro & Sons, P. C. The Shapiro engineering firm had been employed by Canron-NY to obtain the appropri-

ate City of New York permits and it had listed the load limit as 27,000 pounds.

In the course of construction, the crane began lifting operations with William Geer as the operator. It attempted a 36,000-pound lift, approximately 9,000 pounds greater than the lift limit set out in the capacity chart. There was a loud sound and then Geer felt a severe vibration. As fluid spewed from a broken hydraulic fitting, rather than pushing the emergency stop button, Geer released the control lever. He abandoned the cab and fled, as the load of steel beams and crane boom began to fall. The boom struck Olympia & York's building across the street from the construction site, at 245 Park Avenue, dislodging concrete pieces from the building, which hit Matthew May.

The cracking aluminum sheave was deemed the primary cause of the falling boom. A metallurgical and material science professor concluded that the sheaves had numerous preexisting defects, such as porosity and cracks. Thereafter, FMC, on its own initiative, undertook a campaign offering FMC-manufactured steel sheaves as replacements for the Favelle Mort aluminum sheaves. FMC requested all FAVCO crane owners to inspect their sheaves, offering that those with cracks would be replaced without charge.

At the conclusion of plaintiff's case, the court dismissed, as a matter of law, plaintiff's claims against Geer, Shapiro and Canron-Canada. The following day, after the remaining defendants rested, the court dismissed plaintiff's claims against all remaining defendants except FMC. Also, all cross claims and FMC's third-party action against Canron-Canada were dismissed.

The jury returned a verdict against FMC for $1,845,000 in compensatory damages and $5,000,000 in punitive damages. The jury also found for Canron-Canada, the crane owner, against FMC for property damage to the crane in the sum of $235,385.47.

Defendant FMC contends that the trial court committed reversible error when it dismissed, as a matter of law, all claims and cross claims against defendants-respondents Canron-Canada, Canron-NY, William Geer, Olympia & York Properties Company, O&Y Construction Corp., as well as the claims against Shapiro.

■ It is black letter law that the trial court may not usurp the assigned responsibility of the jury and on its own decide

disputed issues of fact, in resolving a motion to dismiss. Accordingly, FMC was entitled to every favorable inference by the court in deciding whether its cross claims and third-party complaint should be dismissed *(Blum v Fresh Grown Preserve Corp.,* 292 NY 241; *Glick v City of New York,* 139 AD2d 402; *Candelier v City of New York,* 129 AD2d 145).

The record certainly contains facts which are sufficient to support claims of negligence against various defendants-respondents. It seems significant that the jury itself recognized there were disputed issues of fact as to the potential liability of at least one of the dismissed parties, Canron-Canada. Early in their deliberations, the jury sent the following inquiry to the court: "In answering question number 3 [i.e., negligence of FMC] should the jury consider whether or not Canron was negligent in using sheaves that were suspect or had been shown to be defective?" By not permitting those claims to go to the jury, the court committed reversible error *(Perfect Brassiere Co. v De Grandmont Co.,* 24 AD2d 847).

█ There was a rational process by which the jury as the trier of facts, upon the evidence presented, could have found in favor, to some extent, of FMC. There was evidence that Canron-Canada had knowledge of some sort of defect in the replacement sheaves received from FMC. The metallurgical analysis report provided that the original sheaves broke because of a defect in castings. It even suggested that another alloy be used. Although the court made little of Canron-Canada's sophistication, it is submitted that this report sufficed to put it on notice that changes were required so that the replacement sheaves would not crack, as did the original sheaves. Although Canron-Canada had no knowledge of the American Bridge incident, it was aware that all the sheaves which it had ever received from FMC/FAVCO International eventually broke. Likewise, Van Hees made observations which led him to believe that the replacement sheaves were defective. S.C. Eccles, Canron-Canada's operations manager, in a letter to FMC, even characterized the nature of the problem as serious and one needing immediate attention. Without regard to FMC's failure to respond to Canron-Canada's concerns, the fact remains that there was evidence that Canron-Canada had notice of a defect which eventually was deemed the proximate cause of the accident. Also, given the facts adduced at trial, Canron-Canada may well have relied upon the report and its own observations, rather than FMC's silence. Likewise, there is no basis for the court to have con-

cluded that there were no reasonable alternatives available to Canron-Canada, since a rational trier of fact could have concluded that it would have been better for Canron-Canada not to use the replacement sheaves or conduct testing on its own. In this respect, Shapiro's testimony provided that while magnetic fluxing, the test used on the steel parts, could not be used on aluminum, there were available, at the time of the accident, ultrasonic and X-ray testing techniques applicable to the aluminum sheaves. Thus, the jury could have concluded that Canron-Canada was negligent in foregoing such testing, given the information in its possession that the original sheaves cracked due to an improper alloy, and that the replacement sheaves appeared defective.

■ ■ The jury could have also concluded that Geer negligently operated the crane, in abandoning the controls rather than using the emergency stop button. May's injuries would, arguably, never have occurred if Geer had followed proper emergency procedures and stopped the boom from falling. Thus, Shapiro testified that if the stop button of the crane had been pushed, even with the loss of hydraulic pressure, it would have stopped the boom from falling. While Van Hees testified that there was nothing Geer could have done to stop the boom from falling once the hydraulic fluids were out, this conflict presented a question of fact which should have been submitted to the jury, especially since Geer could not recall whether he had in fact pushed the button. Under these circumstances, FMC's cross claims against Geer and his employer, Canron-NY, should not have been dismissed. FMC's additional contention, however, that Canron-NY should have been liable because of its failure to take adequate precautions in closing off the street below the crane is meritless. There was no testimony that its failure to close the street violated any regulation or duty or that its failure to do so was the proximate cause of May's injuries.

■ ■ Last, with respect to Canron-NY, FMC argues that there was sufficient evidence for the jury to conclude that Canron-NY's attempt to lift a load in excess of the maximum permitted was the proximate cause of May's injuries. As observed by the trial court, the testimony as to the weight of the load at the time of the sheave break arose from hearsay testimony by Geer that he was told by an unnamed party that the load was approximately 18 tons. In any event, the trial court noted that the crane was generally capable of lifting loads in excess of that lifted at the time of the accident.

Furthermore, there was no testimony that the alleged excessive load was the proximate cause of the accident. Also, FMC's own witness testified that the sheave was not supposed to fail with a 36,000-pound load on the cable. However, the evidence adduced as to Canron-Canada, evincing knowledge of the allegedly defective replacement sheaves, should be imputed to Canron-NY, insofar as it is a subsidiary of Canron-Canada and relied upon the expertise of Van Hees in connection with the assembly and use of the crane at the site of the accident. Van Hees was privy to the metallurgy report and made the observations of defects in the replacement sheaves.

■ While Canron-NY asserts that FMC did not preserve the instant issue for appellate review because it failed to object to the dismissals, we may consider such errors on appeal in the interest of justice *(see, Rivera v Bronx-Lebanon Hosp. Center, 70 AD2d 794).*

■ Next, FMC contends that the evidence at trial was sufficient for the jury to conclude that Olympia & York and O&Y Construction negligently failed to protect May from injury because of their nondelegable duty to protect pedestrians near construction sites (as owner and contractor at the premises). This argument is based upon their failure to temporarily close the street during crane lifts. However, the nondelegable duty of the Labor Law extends solely to employees or workers (Labor Law §§ 200, 240). Furthermore, there was no evidence, noted *supra,* that O&Y was required, by statute or some legal duty, to close off the street. In the absence of notice of the potential harm resulting from the use of the FAVCO 1500 crane, there was missing the element of foreseeability needed to impose such a duty. The same may be said of FMC's claim that O&Y should have used personnel to assist during the crane lifts as flagmen or otherwise *(see, Basso v Miller, 40 NY2d 233).* FMC's claim that it was improper to dismiss its cross claims against Shapiro are likewise without merit. This argument alleges that Shapiro improperly chose 46th Street, a more heavily traveled street, over Depew Place, less traveled, as the pickup point for the crane, because it was more economical. There was unrebutted evidence from an expert from the New York City Department of Buildings that the pickup point chosen was proper and in compliance with city regulations. Additionally, there was no evidence that the chosen pickup point was the proximate cause of the accident (for the same reasons that FMC's cross claims against O&Y were properly dismissed).

■ The trial court's erroneous dismissal of various defendants other than FMC necessarily precluded any meaningful determination by the jury of the existence or extent of FMC's liability. Accordingly, a new trial is required as to defendants-respondents Canron-Canada, Canron-NY, William Geer and FMC, on all issues previously before the trial court.

In improperly dismissing the plaintiffs' claims and FMC's cross claims against the other defendants, the trial court created a vacuum in which the jury was compelled to focus solely on the conduct of FMC. If permitted to consider all the evidence in light of all possible theories of liability as to the other defendants, the jury may very well have found FMC liable for only a percentage, or none, of the plaintiffs' injury.

In this case, the issues of liability of all the defendants are so interrelated as to mandate a retrial of all the issues, as to all the parties *(Walsh v Morris,* 88 AD2d 673, 674).

Moreover, because numerous factual issues were raised from which the jury could have found liability as to other defendants, and since this may have influenced the jury's view of FMC's conduct as it affected plaintiffs, the interest of justice requires reversal of the jury's finding of liability on the part of FMC and a new trial as to all parties *(Troll v Schoonmaker Bros.,* 34 AD2d 1030 [3d Dept 1970]; *see also, Nicholas v Reason,* 84 AD2d 915 [4th Dept 1981]).

■ Canron-Canada's claim for breach of warranty should have been dismissed as a matter of law because it was clearly barred by the Statute of Limitations. A cause of action for breach of an express or implied warranty must be commenced within four years after it accrues (UCC 2-725 [1]; *Heller v U. S. Suzuki Motor Corp.,* 64 NY2d 407). Such an action "accrues on the date the party charged tenders delivery of the product" *(Heller v U. S. Suzuki Motor Corp., supra,* 64 NY2d, at 411; *Rissew v Yamaha Motor Co.,* 129 AD2d 94, 99 [4th Dept 1987]; UCC 2-725 [2]).

It is undisputed that FMC delivered the replacement sheaves to Canron-Canada in February of 1975. The trial court itself noted that the accident giving rise to this case did not occur until five years after the replacement sheaves were sent to Canron-Canada.

Finally, FMC argues that, as a matter of law, the imposition of punitive damages was improper, without support in the evidence, and also excessive.

The principles upon which the imposition of punitive dam-

ages is warranted are well settled in this State. It has been pointed out that punitive damages, more attuned to the criminal rather than the civil side of law, are intended to punish the tort-feasor rather than to compensate the injured party. Such damages: "may only be awarded for exceptional misconduct which transgresses mere negligence, as when the wrongdoer has acted 'maliciously, wantonly, or with a recklessness that betokens an improper motive or vindictiveness' * * * or has engaged in 'outrageous or oppressive intentional misconduct' or with 'reckless or wanton disregard of safety or rights' ". (*Sharapata v Town of Islip,* 56 NY2d 332, 335.)

Virtually all legal systems, whether code or common law, even where tort has been superseded to a considerable extent by private insurance or governmental compensation, have continued to recognize tort liability to situations in which "gross" or "criminal negligence" has been shown. (Freedman, Law in a Changing Society, at 188 [2d ed 1972].) In the United States, while compensatory damages remains the established basis for all sorts of claims sounding in tort, punitive damages are not only well rooted in the law, but seem to be expanding in acceptance, as well as in size of recovery, including cases involving industrial and products liability. Juries have been quite liberal in applying a standard for punitive damages where it decides the action of a defendant manifested a " 'flagrant indifference to public safety' ". (Owens, *Problems in Assessing Punitive Damages Against Manufacturers of Defective Products,* 49 U Chi L Rev 1, 21 [1982]; *see also,* Wheeler, *The Constitutional Case For Reforming Punitive Damages Procedures,* 69 Va L Rev 269 [1983].)

The jury awarded punitive damages against the one remaining defendant, FMC Corporation, in the sum of $5,000,000. It is unnecessary for us at this point to decide whether the punitive damages claim was justified under law or even whether the amount awarded was excessive. The punitive damage verdict must fall because a newly constituted jury should be free to rethink this issue on the facts then presented to it. On the new trial, there will be various other defendants, including FMC. This may well affect the determination by the jury. It may decide that the punitive damages are not warranted if other defendants participated in negligent conduct. It may reconsider the award based on the evidence presented.

Obviously, a manifest injustice would result unless plaintiff-respondent is given the opportunity to relitigate the issue of

liability as against the dismissed defendants-respondents, as well.

Accordingly, the judgment of the Supreme Court, New York County (Edward Greenfield, J.), entered July 1, 1988, in favor of plaintiffs solely against defendant FMC, should be modified, on the law and facts, solely to the extent of remanding for a trial de novo as to liability and punitive damages, and otherwise affirmed, without costs or disbursements.

Judgment of the Supreme Court, New York County (Edward Greenfield, J.), entered July 29, 1988, in favor of Canron, Inc. against FMC for damages to its crane, should be reversed, on the law and facts, and the matter remanded for a trial de novo, without costs or disbursements.

Judgment of the Supreme Court, New York County (Edward Greenfield, J.), entered August 10, 1988, in favor of defendants William Geer and Canron Corporation, should be reversed, on the law and facts, and the matter remanded for trial de novo, without costs or disbursements.

Judgment of the Supreme Court, New York County (Edward Greenfield, J.), entered September 28, 1988, dismissing the action and cross claims against defendants Olympia & York Properties Company and O&Y Construction Corporation, sued herein as Olympia & York Construction Corporation, should be affirmed, without costs or disbursements.

Judgment of the Supreme Court, New York County (Edward Greenfield, J.), entered August 19, 1988, dismissing all claims against defendant Charles M. Shapiro & Sons, P. C. should be affirmed, without costs or disbursements.

Supplemental judgment of the Supreme Court, New York County (Edward Greenfield, J.), entered October 3, 1989, dismissing all claims and cross claims against defendant Canron, Inc., should be reversed, on the law and facts, and the matter remanded for trial de novo, without costs.

SULLIVAN, J. P., KASSAL, SMITH and RUBIN, JJ., concur.

Judgment, Supreme Court, New York County, entered on July 1, 1988 is unanimously modified, on the law and the facts, solely to the extent of remanding for a trial de novo as to liability and punitive damages, and otherwise affirmed; judgment of said court entered on July 29, 1988, is unanimously reversed, on the law and the facts, and the matter remanded for a trial de novo; judgment of said court entered on August 10, 1988 is unanimously reversed, on the law and facts, and the matter remanded for trial de novo; judgment of

said court entered on August 19, 1988 is unanimously affirmed; judgment of said court entered on September 28, 1988 is unanimously affirmed; and the supplemental judgment of said court entered on October 3, 1989 is unanimously reversed, on the law and the facts, and the matter remanded for trial de novo, all without costs and without disbursements.