■ Patricia M. Camillo et al., as Coguardians of Matthew R. May, Also Known as Thomas Barrett, Appellants-Respondents, v William Geer et al., Respondents, et al., Defendant, and FAVCO, Division of FMC Corp., Defendant and Third-Party Plaintiff-Respondent-Appellant. Canron, Inc., Third-Party Defendant-Respondent.—Judgment, Supreme Court, New York County (Edward Greenfield, J.), entered May 21, 1991, which, after a second jury trial on the issue of liability, adjudged (1) that defendants William Geer and Canron Corp. have judgment against the plaintiffs; (2) that the defendants FMC Corp. and Canron, Inc. were each 50% responsible for the happening of the accident; (3) that the plaintiffs have judgment against FMC Corp. in the sum of $4,422,500, which includes $3,500,000 in punitive damages, with interest from April 25, 1991; and (4) that the plaintiffs have judgment against Canron, Inc. in the sum of $922,500, with interest from April 25, 1991, modified on the law and the facts, solely to the extent of remanding for a trial de novo as to liability, vacating the judgment for punitive damages, and otherwise affirmed, without costs. It is further ordered that the trial de novo as to liability be presided over by another Justice.

This action is before us for a second time. On the prior appeal, we reversed the judgment as to liability and punitive damages only and remanded for a trial de novo on those issues *(Camillo v Olympia & York Props. Co.,* 157 AD2d 34 [1990]). We allowed the finding of $1,845,000 for compensatory damages to remain. The facts are set forth in detail in that opinion. We shall only summarize them here.

On April 25, 1980, Matthew May, a pedestrian, was injured by falling concrete that had become dislodged from a building because a crane collapsed. The crane was owned by Canron, Inc. (Canron-Canada), under the control of its New York subsidiary, Canron Corp. (Canron-NY) and operated by William Geer, a Canron-NY employee. The component parts of the crane, including the aluminum sheave that allegedly failed and caused the collapse, were manufactured by Favelle Mort, Ltd. (Favelle Mort), an independent Australian corporation. FMC Corp. (FMC) was the parent company of FAVCO International Corp., the United States distributor, supplier and assembler of the crane component parts.

In 1975, a metallurgical report, done by Canron-Canada because one aluminum sheave broke and cracks were noticed in another, indicated that the failure was due to casting deficiencies. Canron-Canada sent the report to FAVCO, which gave the communication to FMC's service manager, who then forwarded it to Favelle Mort. No response was received from Favelle Mort. Canron-Canada initially took some extra precautionary measures with the replacement sheave provided by FMC but ultimately ceased them, being satisfied that the event was a fluke.

In 1980, Canron-Canada provided Canron-NY with one of its cranes for use on a Manhattan construction project. The accident at issue occurred when operator William Geer attempted a 36,000 pound lift, approximately 9,000 pounds over capacity, with this crane. There was a loud sound, Geer felt a severe vibration and then fluid spewed from a broken hydraulic fitting. Geer fled without pushing the emergency stop button. As the crane fell, it struck a nearby building, causing concrete debris to fall to the ground. May was then injured. Pre-existing defects in the aluminum sheaves, such as cracks and porosity, were deemed the cause of the collapse. Subsequently, FMC voluntarily offered FMC-manufactured sheaves as replacement for the Favelle Mort aluminum sheaves, free of charge. This litigation followed.

The primary issues on this appeal are (1) the admission of evidence of subsequent remedial measures, (2) the sufficiency of the evidence supporting the award of punitive damages, (3) the sufficiency of the jury charge on various liability issues, and (4) whether interest on the award should be computed from the date of the first trial or the second trial.

Turning first to the issue of the admission of evidence as to post-accident actions by the defendants, we conclude that such admission was error. Specifically, evidence of the post-accident recall of aluminum sheaves and replacement of aluminum sheaves with steel sheaves was error (see, Cover v Cohen, 61 NY2d 261 [1984]). In addition, the admission of other incidents prior to the accident here without showing their relevance to this accident was error.

In our prior decision, we reversed the judgment as to punitive damages but we did not decide whether the evidence warranted their assessment (157 AD2d, supra, at 46). We now reach that issue and, based upon the evidence, conclude that punitive damages in the sum of $3,500,000 were not warranted against FMC, as a matter of law. New York law

provides for punitive damages only " 'for exceptional misconduct which transgresses mere negligence, as when the wrongdoer has acted "maliciously, wantonly, or with a recklessness that betokens an improper motive or vindictiveness" * * * or has engaged in "outrageous or oppressive intentional misconduct" or with "reckless or wanton disregard of safety or rights" ' " *(Camillo v Olympia & York Props. Co., supra,* at 46, quoting *Sharapata v Town of Islip,* 56 NY2d 332, 335 [1982]). Such recklessness must be "close to criminality" *(Roginsky v Richardson-Merrell, Inc.,* 378 F2d 832, 843 [2d Cir 1967]). An award for punitive damages must be supported by " 'clear, unequivocal and convincing evidence' " *(supra,* at 851; *see also, Cleghorn v New York Cent. & Hudson Riv. R. R. Co.,* 56 NY 44, 48 [1874]). This legal standard has not been satisfied in the case at bar. The evidence fails to establish that FMC was motivated by malice, vindictiveness or criminal intent or that its conduct was intentionally outrageous or oppressive or undertaken with wanton disregard for the public safety.

Specifically, as noted above, it was error to admit evidence of the post-accident recall of aluminum sheaves. Therefore, it was clearly improper for the trial court to allow plaintiffs to argue, and the jury to consider, evidence of FMC's post-accident recall of the aluminum sheaves and the alleged inadequacies of that recall in determining whether defendant's conduct was so outrageously culpable as to warrant the imposition of punitive damages *(Cover v Cohen,* 61 NY2d, *supra,* at 271; *see also, Schaffner v Chicago & N. W. Transp. Co.,* 129 Ill 2d 1, 17, 541 NE2d 643, 649 [1989] ["(t)he same policy considerations that militate against admission of that evidence (subsequent remedial measures) as proof of negligence * * * counsel against its admission as proof of willful and wanton misconduct"]).

Plaintiffs also argued to the jury that FMC's failure to do more than forward a 1975 metallurgical report that it received from Canron-Canada indicating casting defects in the aluminum sheaves to the manufacturer, Favelle Mort, supported an inference of criminal recklessness. However, the record reveals that the report was sent with an accompanying letter advising that "a more extensive check should be made on these sheaves before they are sent to the United States." This letter was prepared by Christopher Brown, a FMC field service manager, who had no engineering or metallurgical training. He testified that he really did not understand the significance of the report and that he felt the manufacturer

would be the best one to evaluate it. Favelle Mort never responded to the letter or the report. FMC took no further action. Since there is no evidence that FMC attempted to conceal or suppress the report or directed others to do so, and the report was seen by the party for whom it was originally prepared, Canron-Canada, evidence supporting the imposition of punitive damages is lacking.

Support for the punitive damages also cannot be found in three incidents that occurred prior to the accident at issue. Putting aside for the moment whether these incidents were admissible, they were used to argue that FMC's conduct was criminally reckless in that FMC knew that the aluminum sheaves posed a general risk but failed to advise other users, specifically Canron-Canada. However, by virtue of the 1975 metallurgical report, Canron-Canada already was informed of the possibility that the aluminum sheaves were defective. Also, there is no evidence to show the reason that these sheaves broke, that FMC was aware of the reasons, or that FMC knew and chose to ignore that these incidents established that the sheaves were systematically defective.

FMC's 1977 replacement of a cracked aluminum sheave with a steel sheave for another customer, American Bridge Division of U.S. Steel Corp., and its failure to notify 17 other owners of the crane of the availability of steel replacement sheaves also fails to support the award of punitive damages. American Bridge's maintenance supervisor in 1977, Nicholas Dristas, testified that the aluminum sheaves could have broken for any number of reasons and that he considered the event an "isolated incident". Given this testimony, there was no basis for FMC to believe that a general defect existed in the aluminum sheaves and to advise the 17 other owners of the availability of steel replacement sheaves. As to FMC's use of steel replacements, the record shows that FMC always used steel sheaves on cranes that it manufactured and that steel was all that was available to it in 1977. Therefore, contrary to plaintiffs' assertions, the evidence does not establish that FMC supplied steel sheaves to American Bridge because it believed the aluminum sheaves were defective. It also does not establish that FMC decided not to notify the other owners about the availability of steel sheaves to cover up the problem or for an economic benefit.

Finally with respect to punitive damages, under New York Law, a corporation cannot be held liable for such damages unless it can be shown that "a superior officer [of the corporation] in the course of employment orders, participates in, or

ratifies outrageous conduct" *(Loughry v Lincoln First Bank,* 67 NY2d 369, 378 [1986]). The record does not support a finding of outrageous conduct, as set forth above. The only FMC employees who knew of the alleged defect prior to 1980 were Christopher Brown, a field service manager, and Robert Bees, an operation manager. Neither of these employees had the policy-making authority within FMC regarding the sheave failure or the type of notice to be given to FMC customers to be considered a "superior officer".

In light of the foregoing, there is no legally sufficient basis for the award of punitive damages against FMC.

We also assign error to the trial court's refusal to give a missing witness charge specifically pertaining to Canron-Canada employee Gerald Morrow. Mr. Morrow, an engineer in the employ of Canron-Canada at the time of the trial, had participated in the accident investigation and had prepared a Sequence of Events diagram. Canron-Canada relied upon this diagram to establish that the accident was caused by a broken sheave, rather than a break in the hydraulic fitting it installed on the crane. The diagram was admitted into evidence but Mr. Morrow did not testify. Therefore, Mr. Morrow was a missing expert witness and FMC was entitled to have the jury specifically consider the negative inferences that may have flowed from the failure to produce him *(Rivera v MKB Indus.,* 149 AD2d 676, 677 [1989]).

The trial court properly rejected FMC's request for a charge on the doctrine of *res ipsa loquitur* against Canron-NY. Submission of a case on this theory is only proper where " ' "(1) the event [is] of a kind which ordinarily does not occur in the absence of someone's negligence; (2) it must be caused by an agency or instrumentality within the exclusive control of the defendant; (3) it must not have been due to any voluntary action or contribution on the part of the plaintiff" ' " *(Dermatossian v New York City Tr. Auth.,* 67 NY2d 219, 226 [1986]). Where " 'it is at least equally probable that the negligence was that of another' ", *res ipsa* will not be applied *(Corcoran v Banner Super Mkt.,* 19 NY2d 425, 431 [1967] [emphasis omitted]; *Gallagher's Successors v Consolidated Edison Co.,* 52 AD2d 547 [1976]). The evidence established that the alleged defective component part, the aluminum sheave, was manufactured by Favelle Mort, that the crane was assembled by Canron-Canada, and that the crane was under the control of Canron-NY at the time of the accident. Moreover, FMC presented evidence that the cause of the accident was a break in the hydraulic fitting installed on the crane by Canron-Canada.

As such, since it was at least equally probable that the accident was caused by the negligence of parties other than Canron-NY, all of the elements of *res ipsa loquitur* were not present.

Finally, interest cannot be computed from the date of the entry of the first judgment since liability was not fixed at that time *(see,* CPLR 5002, 5003; *Love v State of New York,* 78 NY2d 540 [1991]). Concur—Milonas, J. P., Wallach and Smith, JJ.

Kupferman, J., concurs in part and dissents in part in a memorandum as follows: While I concur in vacating the judgment for punitive damages, I would otherwise affirm.

This matter has been before us previously *(see, Camillo v Olympia & York Props. Co.,* 157 AD2d 34) and considering the insubstantial nature of the points raised, it would be supererogatory to require another trial on liability when we justifiably allowed the award for compensatory damages to remain.